[No. 6443.   Decided January 9, 1907.]

MARY A. LATHAM, *Respondent*, v. J. G. SCRIBNER *et al.*,
*Appellants*, R. B. STACK, *Defendant*.[1]

TRUSTS—EXPRESS TRUSTS—EVIDENCE TO ESTABLISH—SUFFICIENCY —FRAUD—QUIETING TITLE. In an action to quiet title brought to establish a trust by the owner of the land, who had negotiated a sale, against an alleged trustee holding the legal title and the purchasers, who had attempted to take title from such· trustee, there is sufficient evidence to support findings in favor of the plaintiff where it appears that the plaintiff had purchased and paid for the land, title being taken in the name of the trustee, that the trustee made no specific claim to the property, and that all the negotiations for the sale had been. between the plaintiff and the purchasers, who had paid plaintiff one-half the purchase price and given a note and mortgage to plaintiff for the balance, and who had subsequently taken title from the trustee giving a new note and mortgage without requiring a surrender of the first note, and it appearing that there was some evidence that the purchasers were informed as to the real ownership of the property. .

[1]Reported in 88 Pac. 203.

Appeal from a judgment of the superior court for Spo-
kane county, Kennan, J., entered December 1, 1905, upon
findings in favor of the plaintiff, after a trial on the merits
before the court without a jury, in an action to quiet title.
Affirmed.

*Del Cary Smith, L. J. Birdseye,* and *Barnes & Latimer,* for
appellants.

*Henley & Kellam,* for respondent.

PER CURIAM.—On June 10, 1904, and for some time prior
thereto, the appellant J. G. Scribner held the legal title to lot
ten, in block seventy-seven, in the Second Railroad Addition
to the city of Spokane. The respondent, Mary A. Latham,
claimed the beneficial and equitable interest in the property,
contending that the appellant Scribner held the same in trust
for her to be disposed of as she directed. She also held a
power of attorney from Scribner empowering her to convey
the property. On the day above named the respondent made
a sale of the property to the appellant Larsen, for a consid-
eration of three thousand dollars, one-half of which was paid
in cash and appropriated by the respondent to her own use.
A note payable to Scribner was taken for the remainder of
the purchase price, which was secured by a mortgage on the
property conveyed. This note and mortgage was also re-
tained by the respondent as her own property. While the sale
of the property was being negotiated, the attorneys examin-
ing the abstract of title pronounced defective the power of
attorney which the respondent held, and the respondent un-
dertook to procure another one. This she did. Later she
placed the note and mortgage in the hands of her attorneys
for the purpose of having them endorsed over to her by
Scribner. On examining into the matter, the attorneys as-
certained that Scribner claimed that the power of attorney
held by the respondent, purporting to be procured from him,
and the deed made thereunder, were forgeries, that he had

filed of record a revocation of such power of attorney, had cancelled of record the mortgage executed by the Larsens and held by the respondent, and had executed to the Larsens a new deed to the property and had taken and recorded another mortgage securing a note of fifteen hundred dollars, which note he had endorsed to the defendant R. B. Stack. The respondent thereupon brought the present action to establish her interests in the property.

The action, being one of equitable cognizance, was tried by the court without a jury. The court found that the real property was at all times the property of the respondent; that the appellant Scribner had no interest therein, other than that he held the naked legal title thereto; that Scribner wrongfully and fraudulently cancelled the original mortgage on the property and took the second one thereon; and that the appellants Larsen had knowledge that the same was cancelled fraudulently and without right at the time they executed the second mortgage. As to the defendant Stack, the court failed to find that his purchase of the second mortgage was other than bona fide, or that he had notice or knowledge, at the time of the purchase, that the cancellation of the original mortgage was not made in good faith. Judgment was thereupon entered in accordance with the findings, and this appeal taken therefrom.

On the principal issues between the parties, the evidence abundantly sustains the court's findings. From the testimony of the respondent and her witnesses, it appears that the real property was originally acquired by the respondent by purchase from a mortgage company; the respondent paying the purchase price, but taking a deed in the name of one of her sons. This son afterwards deeded the property, with numerous other tracts and lots, to Scribner, reciting that the same was made for the sum of $50 and other considerations. Scribner did not learn of this deed until some months after it was executed. When it was called to his attention by the notary in whose office it was left, he expressed his regret that

the property had been conveyed to him; saying in substance that he had enough business of his own to look after without attending to that of the respondent. Later on Scribner appeared with the respondent before one of the respondent's attorneys, having with him a signed deed in which the grantee was left blank, which he desired to complete and acknowledge. This deed covered a number of tracts of land including this lot in controversy. Scribner, at that time, stated that the property described in the deed was the property of the respondent, and that he wanted to convey it to whomsoever the respondent desired to hold it; mentioning especially that they wished to erase the description of the lot in controversy for the reason that the respondent had sold it and received the consideration for it. The attorney advised against executing a mutilated deed, and drew another one for them omitting from the description the property that had been conveyed, and had it executed by Scribner before a notary who was brought in for that purpose. It was after this transaction that Scribner purported to repudiate the sale made to the Larsens by the respondent, and take a new note and mortgage from them. Scribner himself does not deny that he acquired the legal title to the lot through the means recited by the respondent. Nor does he assert that he paid anything as a consideration for the transfer of the property to him. In his evidence, which appears in the record in the form of a deposition, he does say that he was the "owner" of the property prior to its transfer to the Larsens, and did not authorize the respondent to convey it, but he recites no facts concerning the manner in which he acquired the property, nor does he state what consideration he paid for it, or attempt to explain why he made no effort to obtain from the respondent the cash consideration paid for the property. These facts we think abundantly justified the findings in so far as they affected Scribner.

The evidence as to the Larsens is not so specific, but we think it justified the court in finding that they had knowledge

that the respondent, and not Scribner, was the real owner of the property. At any rate they executed the second note without requiring the production of the first one, and seemingly without any inquiry concerning its whereabouts, when the slightest inquiry of the person to whom they delivered it would have disclosed to them the true state of the case. Their failure to make inquiry alone would seem to charge them with negligence. But in addition to this, the entire dealings by which they acquired the property were had with the respondent, and while there is some dispute on the question, we think the preponderance of the evidence shows that they were then informed who was the real owner of the property. Without pursuing the inquiry further, therefore, we conclude that the findings of the court are sustained by the evidence, and the judgment must be affirmed. It is so ordered.